The next matter on our calendar is Brad Packer v. Raging Capital Management LLC. Good morning, Your Honor. Thomas Fleming for appellants. May I begin? Thank you, Your Honor. I want to begin by saying I miss your wonderful podium at 40 Center Street, but I'll make the best of the current circumstances. I'm sure the court is. We all do. I represent the appellants here, Raging Capital Master Fund Limited, a company with a three-person board, Raging Capital Advisors LLC, a registered investment advisor, and its manager, William Martin. The appellants here appeal the district court's Securities Exchange Act of 1934. Now, the gating issue for liability under Section 16 is whether a defendant is a beneficial owner, as that term is defined in SEC regulations, of 10 percent or more of an issuer's shares. Those regulations make clear that beneficial ownership arises from the power to vote or invest securities as opposed to economic interest or legal title. This appeal rests on the application of those regulations to a standard investment management agreement between a registered investment advisor and its customer, in this case, the master fund. We respectfully submit that the district court's decision has three basic separate errors. The first, the district court resolved disputed issues of fact on summary judgment and found that the rule 56. Second and most important, the district court erred by applying the wrong legal standard to determine whether the master fund was a beneficial owner. Here, the district court's opinion indicates that it's applying alternative standards, each of which is incorrect. Under one standard, the district court applied a principal agent theory to find that the fund was a beneficial owner, even though its agreement gave the advisor the exclusive power to vote or dispose of the shares, all the shares in the portfolio, and was modeled on SEC regulations. The district court's alternative theory looked to see if the master fund had, in its words, an intertwined relationship with the advisor. It basically took the first theory and added a new element, an intertwined relationship. The common flaw in both of these is that the district court deemed the master fund a beneficial owner, even though in reality it had no legal power or ability to vote or dispose of any of the shares in the investment portfolio, and not just these specific securities that are issued here. There were hundreds of them, and it never had the power to do that. The ruling and the legal standard applied is not only at odds with the express language of the agreement, it's also at odds with SEC guidance and the regulatory framework that the SEC has set up, particularly Rule 13g. A third error is that district court departed from the rationale of this court's ruling in Aikhead versus Brookhaven, where the court looked at an exempt investment advisor and its customers and ruled that the shares should be exempt from the determination of a group. Here, we have, we submit an exempt investment advisor, and the court found that the customer was liable, even though the advisor qualified fully for the exemption and the SEC did not require the advisor to file under Section 16a or make any payments under the statute. I'd like to focus on the beneficial ownership standard because it's the most, I think, complex of these three points. The record here shows that the fund raised several hundred million dollars, had several hundred investors, deposited those monies with an investment advisor in 2013 who traded the portfolio. Even though the master fund wasn't able to vote or dispose of any of the shares in the portfolio, the court used a principle and agent theory that essentially eliminates the first sentence of Rule 16a1. Rule 16a1 is the regulation that defines beneficial ownership, and the court essentially read that out of the statute. It purported to apply Coupe and Tonga, Coupe versus WPCS and Analytical Surveys versus Tonga. Neither of those decisions purports to rewrite Section 13d or expand the scope of Section 16. Those cases dealt with a limited partnership that was already a beneficial owner. This court's recent decision in Rubenstein makes that clear, and a limited partner was a one of its constituents, in each case a general partner, and the court used the phrasing of delegation in that context. It has nothing to do with the situation which we had here, where you had a separate corporate entity entering into a standard investment management agreement with an independent advisor, following SEC guidance and complying with, as the amicus brief that's been filed here makes clear, a practice engaged in by thousands and thousands of funds. District Court's alternative standard of intertwining is nothing to the analysis. Those terms are alien to the securities laws. The district court has simply lost sight of the plain text of Rule 16a1 here. This court's recent decision in Rubenstein further confirms the error there. The court also reviewed an investment advisor-customer relationship and made clear that there had to be an agreement with respect to a specific security. And again, this is a generic grant of authority. The standard under 13d, which we respectfully request the court to clarify, is, and it applies in section 16, if there is a grant of voting and investment power over securities to a separate corporate entity in a bona fide transaction and subject to the 61-day rule, then the grantor is not a beneficial owner. I think the amicus brief that's submitted here and our brief lay that standard out in clarity. Counsel, I spent some time looking at the chart, because charts are easier than writing, as the president has learned. And it looks like William Martin has his hand in every one of the before us and at a very high level. Isn't that correct? He is a director, one of three directors of the Master Fund. That's correct, Your Honor. So if that's what you mean, that is correct. He is also, he is the sole manager of the investment advisor, which is what investors are looking for. They want his expertise. And at the fund level, they want independent directors who will monitor him. And that's what the fund provides. Yeah. So he is one of three seats on the board of the fund, and the board alone has the power to amend, modify, or do whatever has to be done to manage the fund. But the fund, the way it's structured is all of the securities are with the investment advisor, and the investment advisor is the one who makes the decisions with respect to them. So the investment advisor is the beneficial owner for 13D purposes, and he gets an exemption under Rule 16A1 as an investment advisor. Your first point was that the district court erred by, I think you said, disregarding the corporate form. Yes, Your Honor. Did he make a finding of what would be called veil piercing? He did not, Your Honor, not explicitly, but what he, the court's language is a little colorful. It said that Mr. Martin could rewrite the agreements with the stroke of a pen. So I think that's the functional equivalent of a veil piercing. And the fund has a three-person board. Mr. Martin had no power to do anything with the stroke of a pen. And under the district court's theory, Mr. Martin theoretically could have increased his salary a hundredfold or done anything, which is certainly not the structure that the investors contemplated when they signed up. They thought they were signing, and they were signing onto an agreement that was clear, simple, and could not be changed without involvement by the independent directors. Well, let me pursue your stroke of the pen phrasing. If on remand, there was a factual inquiry as to the actual control that Mr. Martin was capable of exercising over the entities, and it was determined that that control as a matter of fact was sufficient to enable him to achieve a amendment of the IMA, would the result then be different? Again, Your Honor, I think you would have to go a little bit further and prove that this was structured to avoid Section 13D or Section 16. Why does intent matter? I thought the argument is that it's a strict liability statute, which is why you want us to read it literally. And so when you say if it was structured, that sounds like you're going to intent or motive. But because the second part of Rule 13D deals with plans to evade the regulatory requirements of Section 13. Why do you have to go to that? If, in fact, it was determined after appropriate discovery and trial that he is in control, actual control of the entities, at least sufficient so that he could, on his say-so, amend the IMA, wouldn't that make him a beneficial owner? It might make the fund a beneficial owner, Your Honor. Again, this would all be dependent upon the facts and circumstances, but it might. I would concede that it's possible that it might. There's no evidence here to suggest any of that. I mean, the fund has been well operating and has two independent directors. There hasn't been much discovery, if any, has there? We completed discovery, Your Honor. The independent directors were deposed. Mr. Martin was deposed. Everybody had a chance to take whatever testimony and obtain whatever documents they needed. Well, when you say, then, summary judgment was improperly entered, is the sole issue, then, if we were to agree with you that there needs to be a remand, are you saying the remand would not be for fact-finding? The remand would simply be to reassess the record as made under the appropriate standards? I think if the court, it could be for both, Your Honor. Certainly, if the appropriate standard were to apply, I believe the district court might find that there are no issues of fact and we would need a trial. The court might reassess the evidence and conclude that there were issues of fact, but I think a reversal under Rule 56 implicitly rejects the district court's legal standard here, and it would be appropriate to clarify that legal standard and give the district court an opportunity to determine whether or not we needed a trial. I would also add that under Rubenstein decision, two days before our reply brief was due, and in Rubenstein, the court made it clear there had to be an agreement with respect to a specific security in order for an advisor and a customer to be, you know, liable for the trade, and there's no evidence ever that the fund had any agreement with respect to any specific security. Thank you, counsel. You've resumed your rebuttal. We'll hear from attorney for the appellee. Thank you, Your Honor. My name is Paul Wexler and I am the attorney for the appellee, and I would like to submit the judgment that Brad got this exactly right. The evidence in the record shows that Mr. Martin was an agent for the fund and he was an agent for the investment advisor and his creative this transaction. He was on both sides of the somehow the control over the investment power was not in his control is exactly wrong, and it's belied by the facts that are in the record, but from a broad view, Master Fund is a statutory investor. It was agreed below it owns in excess of 10% and it owned in excess of 10% while it made has no exemption under Rule 16A1A1. It has trades are matchable for disgorgeable profits of $4.9 million, but I want to turn to the idea that somehow the defendant, Master Fund, has successfully delegated its beneficial ownership, and I can show you in the record why that's not true. Judge Brown found that investment management agreement itself represents an agency with Mr. Martin all over the transaction. He signed on behalf of every entity, which is extraordinarily unusual in customary businesses, but the very documents that Mr. Fleming glosses over, but foundational documents of the investment fund show that Mr. Martin had the authority to make any change he wanted to after the investment management agreement was signed. What says that? What says that he talks about the best commercial interest of the fund to enter into a number of agreements, including the investment management? It then says 15.6, the agreements are approved in their present form. However, any one director or alternate director is authorized to make changes to one or more of the agreements in any manner that he or she approves, and the signature of that person on the agreements will be sufficient evidence of his or her approval of such change. Are you reading from the IMA or from the resolution? I'm reading from what was put into evidence by the defendants, which is the resolutions of the hedge fund. Yeah, that's the resolution. The resolution clearly authorizes him to act on behalf of that fund, right? Yes. But how can he unilaterally change an IMA that's been subscribed to by four entities? Excellent question. Well, this fund's bylaws, resolutions, I think is the word that he used, enables him to do it, and because he's the manager and control person- Wait a minute, you said there's a fund bylaw that lets him change the IMA? Yes, it says- Whose bylaw? Which entities? Master Fund. Well, Master Fund may want to change it, but the agreement is signed by four entities, is it not? No, no, they're two different. The agreement is signed by four entities, all signed by Mr. Martin. Yes, he signed them, so they became effective. Right, and the delegation that they're relying on is between Master Fund and the advisor. I understand, and you're arguing to us, at least in your brief and I think today, that Mr. Martin could change the IMA. Right, and the slang- And I'm asking you, how can he do that? He can certainly act on behalf of one entity, you've made that clear, at least that's your argument. He can certainly act individually on behalf of the other three entities to the agreement. Well, with respect, the other two of those other three entities are irrelevant to the resolution of the case because- Why? Why are they irrelevant? They're signatories to an agreement that you say he can personally change. Well, he can personally change it because the delegation is between the Master Fund and the advisor, and since he's the control- But you- Wait a minute, wait a minute, that really doesn't answer the question, I don't think. The IMA is signed by four parties, right? We've got that clear? Okay, and you're saying Mr. Martin can change it? Yes. All right, now I'm asking you, and you say, well, the other two parties are irrelevant. They don't go away because you say they go away, they are signatory, they are parties to an agreement that you say he can personally change it, unless we get those other entities to change it, unless we have some exploration of whether, in fact, he is in control. Maybe he is in control, I don't know, but you say he can do it by a stroke of the pen. If he strikes his pen tomorrow and says, I hereby revoke the IMA, how is that binding on the other corporations? Well, he did sign on behalf of- Does that mean that if a signatory, let's say the typical secretary of General Motors signs something and says, I'm authorized to sign between General Motors and a supplier, then the secretary can change that agreement on his own say-so? You don't mean that, do you? No, but at least with respect to the fund and the advisor, Mr. Martin could do that. With respect to the feeder funds, that aspect of the agreement doesn't affect the feeder funds, delegation- Well, you say that, but that you're saying it with all due respect doesn't make it so. They are still parties who signed a four-party agreement. Yes. So, when you say, well, it really doesn't matter, you've got to give me some authority for saying that, not just say, well, they don't matter. They are parties to an agreement. And so, I ask again, how does Mr. Martin get to change it without the approval of the other parties? Well, if you look at the chart of Raging Capital Group, he is a director of the offshore fund. Yes. Can he personally commit them to something? Yes, he did. He did, at least. He did when he signed the IMA. He can sign for them, but can he change the agreement itself? I would say in light of this situation in which he controls both the fund and capital- Now, see, now you've entered what I suspect is the magic word. You say he controls them, and maybe he does. But as I look at this record, there has yet to be a finding by a fact finder that he does control them. Isn't that so? There's been a summary judgment that says there is no fact question. The other side says there are fact questions, and I'm suggesting to you that one of them is whether he in fact is in control. He may be. I don't know. But I think, and I hope we can agree, at least I can agree, that there has been no explicit finding by this trier that he is in control. Judge Brown did not use the word control. That's correct. He used the word agency, and he showed in his view that Hoopa and Tonga would make this kind of an agency not effect. Well, that was an agency as a matter of law under Delaware law, was it not? We don't have that here. No, but the situation was akin in the sense that Mr. Martin was on both sides of the transaction, at least with respect to the delegation. Well, on both sides, again, from your standpoint, that's a good way to put it, and I don't quarrel with your putting it that way. But if he can't bind those entities, then the fact that he has a role in both of them doesn't mean he controls them. So he may be a director of all of them. That doesn't mean he personally can commit them to a change in the agreement. He may be able to commit them to signing the agreement. Doesn't mean he can commit them to changing it, right? With respect to whether the theater funds put them, your inquiry concerning theater funds, with respect to the other two entities, it's clear that he could change. How does he get to do that? Well, because he controls. We can agree, I believe, that with respect to the advisor, he's the control person under the securities laws. They can see that. So he completely controls the advisor. With respect to the fund, the foundational documents in the fund give him and any other director the right to change the fund, change the agreement. So as to those- Well, let's say even with the advisor, is there a finding that he controls the advisor? Yes, there's this concession. He's the control person. He's the owner of the company. He's under the chart. He's- Who conceded that he is in control of the advisor? The debt defendants. They conceded he's the control person of the advisor. He's sole owner, sole managing member, chairman, and chief investment officer. He's everything. And you're saying that gives him authority to commit the advisor to change the fund? I think we've got a little interruption here, so we're not hearing you. Maybe you're not hearing us. Mr. Wexler? I think we lost Mr. Wexler. I can hear you, Your Honor. Yeah, it still shows him signed in, Your Honor, but he is frozen. I'm going to try to reach out to him now. Okay. We'll have to conclude his time. All right. And turn to Mr. Fleming for his two minutes of rebuttal. Well, you may want him to answer his dependent questions. Well, I would have him answer it if he came back to- Oh, he's not- I think- I think they're bringing him back in. I suspect he signed down. He's going to sign back in. That's the way you fix their poor connection. Right. Thanks, Mr. Fleming. Mr. Fleming, you take your two minutes now, and if he comes back any time before we conclude this argument, we'll allow him to answer the pending question. Mr. Fleming? This confirms my point where I miss your wonderful podium so much. The resolution that Mr. is talking about, it was provided on summary judgment by Mr. Martin. He explained that he signed the investment management agreement pursuant to that resolution. What the resolution did is it approved a whole bunch of documents and offering materials as the form and gave authority to any director to change them. A later paragraph talks about the document in its final form once it's signed being sufficient evidence. So all he did was he signed a document in final form. There's no witness that's testified that there's this ongoing power on the part of any director to change any aspect of the agreement. It frankly makes no sense. What do you say about his point that for some purposes, at least under the securities laws, he is a control person of the fund? He is not a control person of the fund, your honor. The investment advisor has- Well, which did he say? Maybe he said both, but take them one at a time. Is he a control person of either of them? He is a control person of one of them, your honor, the investment advisor, and he is entitled to an exemption under rule 16.81 as a control person of the investment advisor. All right. So his power to change the agreement on behalf of the advisor is undisputed. That is correct, your honor. The fund is a different story. His power to change the agreement on behalf of the, let's call it the customer fund, the master fund. He has no power to do that. That's a board decision. There are two independent directors, both registered with the Cayman Islands Monetary Fund. They're independent fiduciaries, and it's their job to, in effect, protect the investors. And you want to say something about his point that if he could commit the fund to the agreement on his signature, he can also change it on his signature? Well, that's just not true as a matter of law. That's why he submitted the affidavit to provide the resolutions to show that the independent directors authorized him to sign on behalf of the fund. He did sign on behalf of everybody, but he had expressed authorization from the boards of those companies to do so. And your analogy to the secretary of General Motors is legally correct. I guess, am I out of sync now? Yes, you're out of time. We'll ask, let me ask the courtroom Yes, so I did contact him and left him a message. So I'm not sure if he's trying to. My team is also contacting him now to see what's going on, but he did not answer. So I can't invite him back without, you know, somewhere. I don't have an email or anything to invite him back. So I'm hoping he calls back in. But as of now, he has not. Okay, then we'll have to conclude the argument. I will stay on mute and video in case he comes back and would like me to appear. I can turn it off. That's good of you. Thank you. But we're going to move on to our next argument. And your question, Judge Newman will continue to penned. Let me